UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL I., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04988-SEB-TAB |
| | ) | |
| ANDREW M. SAUL Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S REQUEST FOR REMAND**

**I.      Introduction**

Plaintiff appeals the Social Security Administration's denial of his application for Social Security disability insurance benefits.  Plaintiff argues on appeal that the ALJ erred by failing to: (1) properly assess his subjective symptoms, (2) explain the limitations assessed with Plaintiff's residual functional capacity and posing a flawed hypothetical question to the vocational expert that did not include all of the limitations supported by the record, and (3) properly discuss a treating source opinion.  [Filing No. 8.]  As explained below, the ALJ's evaluation of Plaintiff's subjective symptoms was not patently wrong.  In addition, the ALJ properly assessed Plaintiff's RFC, and the questions posed to the vocational expert adequately addressed the assessed RFC and limitations.  Finally, the ALJ properly considered the medical opinion of Plaintiff's treating physician and provided good reasons for giving it little weight due to its conclusory nature and inconsistency with the physician's own treatment notes.  Therefore, Plaintiff's request for remand [Filing No. 8] should be denied.

II.    **Background**

Plaintiff filed an application for a period of disability and disability insurance benefits. The Social Security Administration denied his claim initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ considered Plaintiff's claim for benefits according to 20 C.F.R. § 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 19, 2016, the application date. At step two, the ALJ found that Plaintiff had the following severe impairments: low back pain with radiculopathy; asthma; nonalcoholic fatty liver; coronary artery disease; diabetes; and bone spurs. [Filing No. 5-2, at ECF p. 18.]

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), but with the following limitations:

> [Plaintiff can] lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 of 8 hours in the workday; stand and/or walk for 6 of 8 hours in the workday; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance on level surfaces, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases.

[Filing No. 5-2, at ECF p. 19.]

Next, at step four, the ALJ determined that Plaintiff had no past relevant work. The ALJ also noted that Plaintiff was 45 years old, which is defined as a younger individual, on the date he filed his application, had a limited education, and was able to communicate in English. [Filing No. 5-2, at ECF p. 24.] Finally, at step five, the ALJ found, in considering Plaintiff's age, education, work experience, and RFC, that jobs existed in significant numbers in the national

economy that Plaintiff could perform, including: collator operator, routing clerk, and sorter. [Filing No. 5-2, at ECF p. 25.] The ALJ concluded that Plaintiff was not disabled.

## III.    Discussion

Plaintiff maintains that the ALJ erred by failing to properly evaluate his subjective symptoms, in assessing his RFC and posing the hypothetical question to the vocational expert, and in failing to properly discuss a treating source opinion. [Filing No. 8, at ECF p. 4.] The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial, an ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A.    Subjective symptom evaluation

First, Plaintiff argues that the ALJ failed to properly address Social Security Ruling (SSR) 16-3p and ignored evidence supportive of Plaintiff's subjective symptoms. [Filing No. 8, at ECF p. 15.] "So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). *See also Burmester*, 920 F.3d at 510 ("We may disturb the ALJ's credibility finding only if it is patently wrong. Here, the ALJ's determination was not patently

wrong because of the many specific reasons the ALJ cited from the record." (Internal citation and quotation marks omitted)).

Plaintiff generally contends that the ALJ failed to logically articulate how Plaintiff's subjective statements regarding his symptoms were inconsistent with the objective evidence. [Filing No. 8, at ECF p. 17-19.] This is an inaccurate depiction of the ALJ's decision. In fact, the ALJ provided a detailed summary of Plaintiff's recitation of his symptoms, pain, and limitations, his daily living activities, and his treatment records. [Filing No. 5-2, at ECF p. 20.] For instance, the ALJ noted that Plaintiff said he experienced constant pain that was worse with physical activity; that he could lift/carry up to 20 pounds and walk roughly 30 feet before needing to rest; that bending over, kneeling, and stooping increased his pain; that he is easily fatigued and takes naps throughout the day; and that Plaintiff experienced chest pain and shortness of breath with exertion. [Filing No. 5-2, at ECF p. 20.] However, the ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 5-2, at ECF p. 20.]

Specifically, the ALJ noted that while Plaintiff alleged "significant" functional limitations related to his impairments, "the objective medical evidence demonstrates a greater functional capacity." [Filing No. 5-2, at ECF p. 20.] The ALJ elaborated further, citing as an example that Plaintiff alleged back pain with radiculopathy into the lower extremities, but had never submitted to spinal imaging or EMG nerve conduction testing, and his clinical presentation had been overall normal. [Filing No. 5-2, at ECF p. 20.] The ALJ cited numerous other medical records,

4

including Plaintiff's complaints in November 2014 of lower back pain, but that the physician found that he "presented functionally intact on examination" and was working at a factory and caring for his mother at that time.  [Filing No. 5-2, at ECF p. 20.]  The ALJ also noted that Plaintiff was referred to a podiatrist in February 2016 but never scheduled an initial consultation. [Filing No. 5-2, at ECF p. 21.]  In addition, the ALJ cited Plaintiff's claim that he was not benefitting from physical therapy, yet discontinued services prematurely.  [Filing No. 5-2, at ECF p. 21.]  The ALJ's decision contains multiple pages with detailed descriptions of Plaintiff's medical history, subjective complaints, and largely positive and benign treatment and test results. [Filing No. 5-2, at ECF p. 20-23.]

Ultimately, the ALJ found that while Plaintiff alleged "chronic functional limitations secondary to his comorbidities," the "totality of evidence demonstrates a higher functional level." [Filing No. 5-2, at ECF p. 23.]  While Plaintiff suggests that the ALJ impermissibly discounted his allegations of pain by claiming that his symptoms were not supported by the objective evidence, this is unpersuasive in light of the fact that the ALJ explicitly stated that he accounted for greater restrictions in the RFC than state agency doctors due to Plaintiff's alleged symptoms. [Filing No. 5-2, at ECF p. 23.]  The ALJ concluded that Plaintiff had the RFC to perform light work but included postural and environmental restrictions to account for his subjective complaints, even though "the totality of the objective evidence [was] not remarkable for the degree of functional limitations he has alleged."  [Filing No. 5-2, at ECF p. 23.]  The ALJ's decision reflects a thorough evaluation of Plaintiff's subjective symptom complaints, and the ALJ provided specific reasons for ultimately finding that the objective evidence did not reflect the same level of functional limitations as Plaintiff alleged.

Plaintiff also argues that "[j]ust because objective tests were largely negative does not mean that [Plaintiff's] pain is not very real." [Filing No. 8, at ECF p. 18.] Indeed, as the Commissioner concedes, there is no dispute that Plaintiff experienced pain and limitations from his impairments. The ALJ acknowledged this throughout her opinion and in assessing limitations with Plaintiff's RFC. However, as the ALJ noted, "[d]isability requires more than just the ability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." [Filing No. 5-2, at ECF p. 23.] *Cf. Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) ("Pain can be severe to the point of being disabling even though no physical cause can be identified, though in such cases, the claimant's credibility becomes pivotal. Also, the lack of objective support from physical examinations and test results is still relevant even if an ALJ may not base a decision solely on the lack of objective corroboration of complaints of pain.").

Moreover, the ALJ reviewed not just Plaintiff's subjective complaints of symptoms and pain, but all the evidence in the record. This included, for instance, Plaintiff's report that he had difficulty getting jobs because of past felonies. [Filing No. 5-2, at ECF p. 23.] But there is no indication that the ALJ somehow conflated this fact with Plaintiff's ability or inability to work due to pain. Similarly, Plaintiff argues that the ALJ incorrectly recited Plaintiff's work and income history when Plaintiff was noncompliant related to a lapse in medical insurance. [Filing No. 8, at ECF p. 18.] Even if the ALJ's recitation was inaccurate, such error was harmless at best, as her overall analysis was supported by substantial evidence. *See, e.g., Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) ("[W]e believe the ALJ's error did not affect the outcome. And, again, the ALJ need not mention every strand of evidence in her decision but only enough to build an accurate and logical bridge from evidence to conclusion." (Internal citation and

quotation marks omitted)).  Finally, while Plaintiff accuses the ALJ of cherry-picking facts that support the ALJ's decision, Plaintiff does not cite any evidence that the ALJ allegedly omitted. Accordingly, the ALJ's assessment of Plaintiff's subjective symptoms was not patently wrong.

**B.    RFC and limitations**

Next, Plaintiff maintains that the ALJ failed to properly explain the rationale behind the RFC finding and that "[t]he mandated predicate function-by-function assessment, along with the necessary reasoning behind such an assessment are missing."  [Filing No. 8, at ECF p. 20.]  In addition, Plaintiff argues that since the ALJ used the RFC as the basis for his hypothetical question to the vocational expert, the hypothetical question failed to include all necessary information regarding Plaintiff's limitations supported by the medical evidence in the record. [Filing No. 8, at ECF p. 21.]

As noted above, the ALJ determined that Plaintiff had the RFC to perform a reduced range of "light" work, with the following limitations:

> [Plaintiff can] lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 of 8 hours in the workday; stand and/or walk for 6 of 8 hours in the workday; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance on level surfaces, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases.

[Filing No. 5-2, at ECF p. 19.]  The ALJ reached this conclusion after evaluating all the clinical, diagnostic, and opinion evidence in the record.  In addition, she relied in part on assessments from state agency physicians and the consultative examiner.  [Filing No. 5-2, at ECF p. 20-23.]

Plaintiff argues that the ALJ erred because he did not provide a "function-by function assessment," [Filing No. 8, at ECF p. 20], relying on SSR 96-8p, which emphasizes that the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" before expressing the RFC in terms of

exertional levels.  However, the Seventh Circuit has maintained that "the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of the claimant's symptoms and medical source opinions is sufficient[.]"  *Knox v. Astrue*, 327 F. App'x 652, 656 (7th Cir. 2009).  Earlier this year, the Seventh Circuit once again articulated that "a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not necessarily require remand."  *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020). In *Jeske*, the Seventh Circuit stated:

> Our role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence.  The ALJ's explanation must enable us to meaningfully carry out that role.  But if we can tell that the ALJ considered the claimant's ability to perform all seven functions, we need not remand to have the ALJ better articulate its analysis on the claimant's exertional capacity.

*Id.* (citations omitted).  Rather, an ALJ is only required to "minimally articulate" her justification for rejecting or accepting specific evidence.  *See, e.g., Berger v. Astrue*, 516 F. 3d 539, 545 (7th Cir. 2008) ("An ALJ must only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability."  (Internal citation and quotation marks omitted)). The ALJ's decision in this case reflects proper consideration, above and beyond a minimal articulation, of all the evidence and Plaintiff's symptoms.

In relation to the question posed to the vocational expert, Plaintiff unpersuasively argues that the hypothetical question was flawed because it did not include all the limitations supported by medical evidence in the record.  [Filing No. 21, at ECF p. 21.]  Yet Plaintiff gives no indication what additional limitations he believes the ALJ should have addressed, and he cites to no evidence that the ALJ allegedly ignored.  Plaintiff essentially asks this Court to reweigh the evidence, which the Court cannot do.  *See, e.g., Burmester*, 920 F.3d at 510.  The ALJ's RFC was

supported by substantial evidence and the hypothetical question to the vocational expert was not "fundamentally flawed."

### C.    Treating Source Opinion

Finally, Plaintiff claims that the ALJ failed to properly discuss the opinion of treating source Dr. Ann Zerr.  [Filing No. 8, at ECF p. 23.]  Plaintiff cites to a physical residual functional capacity questionnaire that Dr. Zerr completed, which Plaintiff contends if given proper weight, would have deemed Plaintiff disabled.  [Filing No. 8, at ECF p. 23.]  The ALJ gave only "little" weight to Dr. Zerr's opinion [Filing No. 5-2, at ECF p. 23], and Plaintiff argues that the ALJ did so without specifically addressing the appropriate factors or providing sound justification for dismissing Dr. Zerr's opinion.  [Filing No. 8, at ECF p. 23.]

In general, with claims filed before 2017, "a treating source's opinion is entitled to controlling weight if it is supported by sound medical evidence and a consistent record." *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020).  However, an ALJ may discredit a treating physician's medical opinion so long as she provides good reasons for doing so, such as that the treating source opinion was inconsistent with other evidence in the record or not well supported by medical findings.  *See, e.g., Burmester*, 920 F.3d at 512 ("The exclusion of the treating physicians was not unsupported in the ALJ opinion.  Instead, the ALJ provided detailed reasons for his finding that the opinions of Dr. Bustos and Dr. Centena were not supported by the record."); *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("And though treating physician's opinions . . . are usually entitled to controlling weight, an ALJ may discredit the opinion if it is inconsistent with the record."  (Internal citation omitted)).  *See also Olivas v. Saul*, 799 Fed. App'x 389, 391 (7th Cir. 2019) ("Under the treating physician rule in effect at the time of Oliva's application, the ALJ had to give a treater's opinion controlling weight if it was well-

supported and not inconsistent with other substantial evidence.  If controlling weight is not accorded to a treating physician's views, the ALJ must assign it a proper weight based on factors like the length and nature of the physician-patient relationship, the opinion's consistency with the record, and the physician's area of specialty.  As long as the ALJ considers these factors and minimally articulates her reasons, we will uphold her decision not to assign controlling weight to a treating physician's opinion."  (Internal citations, quotation marks, and footnote omitted)).

Here, the ALJ explained that she assigned Dr. Zerr's opinion "little" weight because it was "conclusory and inconsistent with her treatment notes."  [Filing No. 5-2, at ECF p. 23.]  In addition, the ALJ elaborated:

> [Dr. Zerr] indicated drastic exertional and postural limitations, which are devoid from her personal observations.  She prescribes the need for at will change in positions, but she records virtually normal physical examinations.  With the exception of finding reduced range of motion in the claimant's right knee and right wrist on examination in June 2018, her treatment notes are unrevealing.  Overall, the discrepancy between her benign treatment notes and the medical source statement assessing [Plaintiff's RFC] makes her opinion less reliable and persuasive.

[Filing No. 5-2, at ECF p. 23-24.]  Thus, the ALJ reasonably concluded that these discrepancies between Dr. Zerr's treatment notes and her medical source statement rendered her opinion less reliable and persuasive.  While the ALJ did not explicitly discuss the regulatory factors outlined in 20 C.F.R. § 416.927(c), she was not required to do so.  Rather, the ALJ adequately articulated why she concluded that Dr. Zerr's opinion was inconsistent with the overall medical record.  These explanations constitute good reasons to support the ALJ's determination that Dr. Zerr's opinion was not entitled to controlling weight.  Accordingly, the Court should find no error in the ALJ's evaluation of Dr. Zerr's opinion.

**IV.    Conclusion**

In sum, the ALJ's assessment of Plaintiff's subjective symptoms was not patently wrong. Moreover, the RFC was supported by substantial evidence, and the ALJ provided good reasons for not giving treating physician Dr. Zerr's opinion controlling weight.  Accordingly, Plaintiff's brief in support of appeal and request for remand should be denied.  [Filing No. 8.]

Any objection to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 7/21/2020

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

11