UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL I.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-04988-SEB-TAB |
| ) | |
| ANDREW M. SAUL, Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ORDER OVERRULING PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ADOPTING THE RECOMMENDATION AND AFFIRMING THE FINAL DECISION OF THE COMMISSIONER

Plaintiff Michael I. ("Michael") appeals the final decision of the Commissioner of the Social Security Administration ("SSA") denying his January 19, 2016, application for supplemental security income ("SSI"). R. (Dkt. 5) at 15. The application was initially denied on May 24, 2016, R. at 80, and upon reconsideration on September 12, 2016, R. at 89. The administrative law judge ("ALJ") conducted a hearing on July 24, 2018, R. at 32–58, resulting in a decision on October 10, 2018, that Michael was not disabled and thus not entitled to receive SSI, R. at 12, 15. The Appeals Council denied review on

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

October 25, 2019, and the Commissioner's decision became final. R. at 1. On December 20, 2019, Michael timely filed this civil action seeking judicial review of that the decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Dkt. 1. The Court referred this matter to Magistrate Judge Baker, Dkt. 6, who, following the completion of briefing, submitted his Report and Recommendation on July 21, 2020, recommending that the decision of the Commissioner be affirmed, Dkt. 14. The cause is now before the Court on the Plaintiff's timely filed Objection to the Magistrate Judge's Report and Recommendation. Dkt. 15; 28 U.S.C § 636(b)(1)(B).

For the reasons outlined below, we overrule the objection to the Report and Recommendation and affirm the Commissioner's decision.

## **Background**[2]

Michael was 45 years of age when he filed the application under review. *See* R. at 154.

The ALJ followed the five-step sequential evaluation set forth by the SSA, *see* 20 C.F.R. § 416.920(a)(4)(i) to (v), in concluding that Michael was not disabled. R. at 24. Specifically, the ALJ found as follows:

- At Step One, Michael had not engaged in substantial gainful activity[3] since January 19, 2016, the application date.[4] R. at 17.

---

[2] The relevant evidence of record is amply set forth in the parties' briefs as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

[4] SSI is not compensable before the application date. 20 C.F.R. § 416.335

- At Step Two, he had "the following severe impairments: low back pain with radiculopathy; asthma; nonalcoholic fatty liver; coronary artery disease; diabetes; [and] bone spurs."  R. at 17 (citation omitted).

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  R. at 17–18.

- After Step Three but before Step Four, Michael had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 416.967(b) except he [could] lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 of 8 hours in the workday; stand and/or walk for 6 of 8 hours in the workday; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance on level surfaces, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases.  R. at 18.

- At Step Four, Michael did not have any past relevant work to consider.  R. at 23.

- At Step Five, relying on the vocational expert's testimony and considering Michael's age, education, work experience, and RFC, he was capable of making an adjustment to other work with jobs that existed in significant numbers in the national economy in representative occupations such as a collator operator, routing clerk, and sorter.  R. at 23–24.

## Standard of Review

"A district court may assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact."  *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 760 (7th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)).  "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it."  *Schur*, 577 F.3d at 760 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)).  After a

Magistrate Judge makes a Report and Recommendation, either party may object within fourteen days.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made" with respect to dispositive motions.  28 U.S.C. § 636(b)(1).  Further, a judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

> Upon review of the Commissioner's decision,
>
> [w]e will uphold [it] if it applies the correct legal standard and is supported by substantial evidence. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).  Our review is limited to the reasons articulated by the ALJ in her decision.  *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010).

*Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).  In determining whether the decision was properly supported, we neither reweigh the evidence nor assess the credibility of witness, nor substitute our judgment for the Commissioner's.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Michael raised three errors on appeal, contending that the ALJ: (1) improperly evaluated Michael's subjective statements about his symptoms, (2) failed to properly explain her RFC finding, and (3) improperly weighed the opinion of Michael's treating physician.  Dkt. 8 at 4.  The Magistrate Judge recommended that the Commissioner's final decision be affirmed, concluding that: (1) the ALJ's subjective symptom evaluation

was not patently wrong, Dkt. 14 at 3–7, (2) the ALJ provided an adequate explanation of her RFC finding that was supported by substantial evidence, *id.* at 7–9, and (3) the ALJ gave good reasons for giving little weight to Michael's treating physician's opinion, *id.* at 9–10. Michael objects to each of the Magistrate Judge's conclusions. Dkt. 15. However, Michael predominantly reiterates the legal arguments that were considered by the Magistrate Judge. *Id.* Except Michael takes issue with the Magistrate Judge's reference to harmless error—arguing that the doctrine is "often used," "repeatedly criticized," and "is not an exercise in providing [a missing] rationale for the ALJ's ultimate conclusion." *Id.* at 4.

After careful review, we overrule the objections. The Magistrate Judge's conclusions correctly reflect the facts and the law applicable to Michael's case. As such, we adopt the Magistrate Judge's Report and Recommendation.

## Analysis

Concerning the ALJ's subjective symptom evaluation, Michael asserted in his initial brief that "[t]he ALJ's justifications and reasoning [were] inaccurate and unfounded." Dkt. 8 at 18. Specifically, Michael contended:

> [The ALJ] pointed out that disability requires more than just the inability to work without pain, and that [Michael] also told his primary care physician that he had trouble finding work because of past felonies and a limited education. [The ALJ] noted that this is not a basis for finding disability. [She] also found that while [Michael] stated [that] he has trouble performing housework, he has been performing side jobs that involve exertion and stamina. First, when [Michael] told his physician that he had trouble finding work because of past felonies and a limited education, he first told [Ann D. Zerr, M.D.] that he currently [could not] work due to pain. Just because he . . . had difficulty finding jobs in the past does not bear weight on his inability to work now due to pain. Further, while the

5

> ALJ did not cite where [she] found that [Michael] ha[d] been performing side jobs that involve[d] exertion and stamina, it is assumed this was from [Michael's] testimony. However, this answer was in response to how [Michael] was supporting himself for the last fifteen years. He did not testify that he was currently performing these side jobs. His earning reports do not indicate he has made any income at all since the alleged onset date. Oddly, the ALJ also reports that there were periods of noncompliance related to [a] lapse in medical insurance, but that evidence show[ed Michael] was working and receiving income. First, the three pages of [the] record the ALJ cite[d were] dated two years prior to the application date, second, none of these records ever state[d] that [Michael] was working and receiving income. In fact, one of them expressly states that he has not been working and another that he has had no income for four years.

Dkt. 8 at 17–18 (record citations removed).

The Magistrate Judge explained, in part:

> Moreover, the ALJ reviewed not just Plaintiff's subjective complaints of symptoms and pain, but all the evidence in the record. This included, for instance, Plaintiff's report that he had difficulty getting jobs because of past felonies. But there is no indication that the ALJ somehow conflated this fact with Plaintiff's ability or inability to work due to pain. Similarly, Plaintiff argues that the ALJ incorrectly recited Plaintiff's work and income history when Plaintiff was noncompliant related to a lapse in medical insurance. Even if the ALJ's recitation was inaccurate, such error was harmless at best, as her overall analysis was supported by substantial evidence.

Dkt. 14 at 6 (citing *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (additional citations omitted).

We read the Magistrate Judge's analysis to conclude that (1) any inaccuracies included in the ALJ's summary of the record were immaterial, and alternatively, (2) any error was harmless.

6

We conclude that any inaccuracies have not been demonstrated to be material within the context of the ALJ's subjective symptom evaluation. The Seventh Circuit has explained:

> The ALJ's credibility determinations are entitled special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir.2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000), but the ALJ is still required to "build an accurate and logical bridge between the evidence and the result . . . ." *Shramek,* 226 F.3d at 811 (internal quotation marks omitted). "In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking at it." *Id.* (internal quotation marks omitted).

*Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). A reviewing court "will overturn the ALJ's credibility determinations only if they are 'patently wrong.'" *Id.* (quoting *Eichstadt v. Astrue,* 534 F.3d 663, 668 (7th Cir.2008)).

The ALJ considered that Michael "told his primary care physician that he had trouble finding work because of past felonies and a limited education." R. at 22 (citation omitted). On June 4, 2018, Michael brought paperwork for his disability claim to be completed by Dr. Zerr. R. at 1051. Michael explained that he could no longer perform "manual labor/construction work" because of pain related to his impairments. *Id.* He also explained that he had been unable to complete physical therapy because of insurance coverage issues. *Id.* However, Michael added that his limited education disqualified him from consideration for other jobs, and his "past felonies" also made it difficult for him to find work. *Id.*

The ALJ accurately concluded that the latter considerations were "not a basis for finding disability." R. at 22. Michael's criminal history is a non-medical barrier to obtaining employment that is outside the scope of disability. *See, e.g.*, *Jones v. Shalala*, 10 F.3d 522, 523–26 (7th Cir. 1993). Michael has not presented any legal authority that the ALJ was not permitted to consider Michael's felony history—particularly when he admitted the history was a factor hindering his ability to find employment. Moreover, the ALJ relied on the vocational expert's opinion that Michael's education level did not preclude from him from performing less physical occupations than the work he had performed in the past. The relevant evidence considered in its proper context supports the ALJ's credibility determination.

When the ALJ summarized the evidence concerning Michael's impairments, the ALJ acknowledged that the record showed that Michael had a history of uncontrolled diabetes mellitus. R. at 22. The ALJ explained that "[t]here were periods of noncompliance related to [a] lapse in his medical insurance, but the evidence shows he was working and receiving income." R. at 22 (record citations omitted).

Michael takes issue with the reference to him working. As he points out, the evidence of him not taking his diabetes medication was in 2014—prior to his alleged onset date. *See, e.g.*, R. at 353. The records noted that his situation was complicated by his lack of insurance and income at that time. *Id*.

To a certain extent, the ALJ's confusion about Michael's working status is understandable, and his reference to his earnings record does not clarify the ambiguity. In response to the ALJ's question—prompted by an earnings record that never showed

8

significant income— about how Michael had been gotten by financially for all the years prior to alleging disability, Michael testified that he was paid in cash for "side jobs," did not maintain regular employment because he preferred to work for himself rather than be told what to do, and had not earned more than approximately $7,000 in any year.  R. at 36.  He also explained that he managed an apartment complex for twelve years in exchange for living space until 2013.  R. at 36–37.

  Regardless, the ALJ's summary continued to explain that the later evidence showed that Michael was given free medication for his diabetes, any further suboptimal A1C levels were explained by poor eating habits, and the most recent evidence showed his glucose levels to be in the therapeutic range.  R. at 22.  An ALJ is permitted to consider the effectiveness of treatment in making her credibility determination.  20 C.F.R. § 416.929(c)(3)(iv); *see Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018) (The ALJ's credibility determination relying on "good response" to treatment was not upheld because the finding was inconsistent with the record.).  An ALJ can also reasonably determine that a claimant's allegations are not credible when the claimant fails to follow treatment recommendations.  *See Dixon v. Massanari*, 270 F.3d 1171, 1179 (7th Cir. 2001) (discounting evidence of elevated blood sugar levels, in part, because of the claimant's failure to follow dietary recommendations).  Shortly after the period of uncontrolled diabetes—just before Michael's alleged onset date—his "A1C greatly improved" despite his lack of insurance.  R. at 313.  On February 11, 2016, he reported some higher glucose readings but told his doctor that his diet included starchy foods like pasta and potatoes even though he knew that they raised his glucose levels.  R. at 290.

On March 26, 2018, despite a recent hospitalization related to an inability to hold down food because of abdominal pain, he reported his glucose readings were within his targeted range. R. at 984. Michael's A1C level was noted to be 6.9% during his hospital stay, which was within his goal of being under 7%, and he was "[c]ommended for excellent control" of his diabetes. R. at 988.

The ALJ's decision provided sufficient rationales for discrediting Michael's subjective statements about his symptoms. Those rationales are supported by substantial evidence. Accordingly, we adopt the Magistrate Judge's conclusion that the ALJ's credibility determination was not patently wrong.

## Conclusion and Order

For the reasons explained above: Michael's objections (Dkt. 15) are OVERRULED. The Report and Recommendation (Dkt. 14) is ADOPTED. The Commissioner's decision is AFFIRMED. Final judgment shall issue by separate document. Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date: 3/24/2021

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com